1
2
3
4
5               UNITED STATES DISTRICT COURT
6              EASTERN DISTRICT OF WASHINGTON
7  VICENTE RODRIGUEZ, JOVITA        )
   RODRIGUEZ, and GUADALUPE         )   NO. **CV-10-3010-LRS**
8  FRANCO, on behalf of themselves  )
   and others similarly situated,   )   **ORDER RE MOTIONS FOR**
9                                   )   **PROTECTIVE ORDER AND**
                                    )   **TO COMPEL, AND**
10         Plaintiffs,              )   **BIFURCATING CASE**
                                    )
11         v.                       )
                                    )
12 ACL FARMS, INC., KEVIN B.        )
   GAY, and WASHINGTON FARM         )
13 LABOR SOURCE, LLC,               )
                                    )
14                                  )
           Defendants.              )
15 _____ )

16       **BEFORE THE COURT** are the Plaintiffs' Motion For Protective Order

17 Re:  Immigration Status (Ct. Rec. 52) and Defendant Washington Farm Labor

18 Source, LLC's Motion To Compel Discovery Responses (Ct. Rec. 76).  These

19 motions were heard with oral argument on November 9, 2010.  Andrea Schmitt,

20 Esq., argued for Plaintiffs.  Brendan V. Monahan, Esq., argued for Defendants

21 ACL Farms, Inc. and Kevin B. Gay.  Jeffrey M. Kreutz, Esq., argued for

22 Defendant Washington Farm Labor Source, LLC (WA-FLS).

23

24 **I.  BACKGROUND**

25       Plaintiffs allege that in 2008, Defendants unlawfully obtained approval for

26 H-2A "guest workers" and denied agricultural employment to Plaintiffs and the

27

28

**ORDER RE MOTIONS FOR**
**PROTECTIVE ORDER AND TO COMPEL  - 1**

class of workers they represent.[1]  Plaintiffs allege Defendant ACL Farms violated the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. §§ 1801-1872, by providing false or misleading information concerning the terms and conditions of employment and by failing to comply with the working arrangement.  Plaintiffs allege Defendant WA-FLS violated Washington's Farm Labor Contractors Act (FLCA), RCW Chapter 19.30, by making or causing to be made false, fraudulent or misleading information concerning the terms, conditions or existence of employment at ACL Farms.

## II.  DISCUSSION

There is no dispute that immigration status is irrelevant to determining Defendants' liability for the alleged violations of the AWPA and the FLCA, and whether Plaintiffs are entitled to statutory damages for any such violations.  The issue is whether immigration status is relevant to whether any actual damages should be awarded.

In *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147-49, 122 S.Ct. 1275 (2002), the U.S. Supreme Court concluded that awarding backpay to illegal aliens "for years of work not performed" ran counter to the "comprehensive scheme prohibiting the employment of illegal aliens" enacted by Congress. (Emphasis added).  In *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499 (W.D. Mich. 2005), migrant and seasonal agricultural workers brought a class action against employers under the Fair Labor Standards Act (FLSA) and the AWPA.  The district court concluded the plaintiffs' immigration status was not relevant for purposes of standing or damages because the plaintiffs were seeking

---

[1] An order granting class certification is being entered contemporaneously with this order.

**ORDER RE MOTIONS FOR
PROTECTIVE ORDER AND TO COMPEL  - 2**

1  backpay for work already performed.  The *Galaviz-Zamora* court relied on *Flores*
2  *v. Amigon*, 233 F.Supp.2d 462, 463 (E.D.N.Y. 2002), an FLSA case, which
3  distinguished *Hoffman* on the basis that it "did not expressly deal with the
4  circumstances presented here, where the plaintiffs have already performed the
5  work for which unpaid wages were being sought."  The *Flores* court observed that
6  policy issues implicated in *Hoffman* are not implicated in circumstances where an
7  employee seeks backpay for work already performed.  *Id*. at 464.  Thus, while the
8  award of backpay in *Hoffman* was held to be contrary to federal immigration law,
9  compelling employers to pay illegal aliens at the same rate as legal workers for
10  work actually performed, helps eliminate the incentive to employ illegal aliens
11  which is one of the stated goals of federal immigration law.  *Id*.

12      In the captioned matter, what the Plaintiffs would seek as actual damages
13  are wages they would have earned had they been offered and accepted the work
14  that was instead done by H2-A guest workers.  The Plaintiffs are not seeking
15  compensation for work already performed.  In a March 2008 decision in *Perez-*
16  *Farias v. Global Horizons, Inc.*, CV-05-3061-RHW.  an Eastern District of
17  Washington case involving alleged violations of both the AWPA and the FLCA,
18  the Honorable Robert H. Whaley wrote that "[a]ny class member that seeks to
19  prove damages at a later proceeding will have to show that they are qualified to
20  work.  **An illegal alien is not qualified to work under clearance orders**."  2008
21  WL 833055 at *12  (Emphasis added).  Subsequently, in an April 2009 decision in
22  that case, 2009 WL 1011180 at *19, Judge Whaley addressed the fact the plaintiffs
23  were no longer seeking actual damages, but only statutory damages:

24          Given that Plaintiffs are no longer seeking actual damages,
            the Court finds that the Denied Work subclass will not have
25          to show proof of eligibility to work in order to recover
            statutory damages.  The purpose of statutory damages is to
26          compensate, deter and encourage persons to enforce their
            rights under the statute.  Plaintiffs were aggrieved irrespective
27          of their eligibility to work.  As such, proof of eligibility to

28

**ORDER RE MOTIONS FOR**
**PROTECTIVE ORDER AND TO COMPEL  - 3**

1    work is not necessary in order to receive statutory damages.

2    Judge Whaley never explicitly ruled immigration status was irrelevant to

3    collection of actual damages, and his 2008 ruling suggests he would have

4    considered it relevant.

5         Another Eastern District of Washington case, *Sandoval v. Rizzuti Farms,*

6    *Ltd.*, CV-07-3076-EFS, involved alleged violations of Washington's Little-Norris

7    LaGuardia Act, RCW 49.32.020.  In an April 2009 decision, 2009 WL 959478 at

8    *3, the Honorable Edward F. Shea initially found that immigration status was

9    relevant to backpay claims under RCW 49.32.020 as this is the "state analogue" to

10   the National Labor Relations Act (NLRA) which was at issue in *Hoffman*.  He

11   concluded that should the plaintiffs' claims survive summary judgment and the

12   case proceed to trial, the court would "permit limited discovery into Plaintiffs'

13   immigration status because it is relevant to Plaintiffs' backpay claims for work not

14   performed." *Id*.  In July 2009, Judge Shea reconsidered his April 2009 decision

15   and reversed course.  He noted the distinction between "backpay," that being

16   damages awarded to an employee or ex-employee when an employer unlawfully

17   prevents that individual from working, versus "uncompensated wages" which are

18   already earned wages which have not been collected.  2009 WL 2058145 at *1 at

19   fn. 1.  Judge Shea found, however, there was no "practical distinction" between

20   the two because "[b]oth depend on proof of hours that were worked or would have

21   been worked but for the employer's violative conduct." *Id*. at *2.

22        In the captioned matter, the undersigned questions whether the Plaintiffs

23   could in fact have continued to work or resumed work at ACL Farms but for the

24   alleged violations of the AWPA and the FLCA.  This court concludes actual

25   damages must be treated differently than liability and statutory damages.  Making

26   immigration status irrelevant to liability and statutory damages seemingly helps

27   eliminate an employer's incentive to employ illegal aliens.  The court is not

28

**ORDER RE MOTIONS FOR**
**PROTECTIVE ORDER AND TO COMPEL  - 4**

convinced the same is true with regard to actual damages for work which was not performed. An award of statutory damages serves the purpose of deterring improper employment of H2-A guest workers to the detriment of local workers who can satisfy the employer's labor needs. The primary purpose of the AWPA's statutory awards provisions is promoting compliance by agricultural employers and deterring and correcting exploitative practices that have historically plagued the migrant farm labor market. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.3d 1317, 1332 (5th Cir. 1985). The purpose of FLCA's statutory awards provisions is presumably the same. No proof of actual injury is necessary. Actual damages compensate actual injury and represent an additional step beyond liability and statutory damages. Assuming actual damages can be awarded to a plaintiff because he could have continued to work or resumed work at ACL Farms (i.e., he was eligible to work), the next question then is whether that plaintiff reasonably mitigated his damages. It is necessary to consider mitigation on a plaintiff-by-plaintiff basis in order to fairly and accurately determine the amount of actual damages to which a particular plaintiff is entitled.

In *Rivera v. Nibco, Inc.*, 364 F.3d 1057 (9th Cir. 2004), the Ninth Circuit Court of Appeals disagreed with the defendant's position that the Supreme Court's decision in *Hoffman* foreclosed any award of backpay to an undocumented plaintiff, and that discovery of documented or undocumented status was essential to defendant's defense in a Title VII case. The Ninth Circuit thought it "unlikely" that *Hoffman* applied in Title VII cases and noted significant differences between the NLRA (at issue in *Hoffman*) and Title VII. *Id.* at 1067-69. The circuit concluded "the overriding national policy against discrimination would seem likely to outweigh any bar against the payment of back wages to unlawful immigrants in Title VII cases." *Id*. at 1069. *Rivera* did not, however, settle the relevancy of immigration status to an award of actual damages (backpay) for work

**ORDER RE MOTIONS FOR**
**PROTECTIVE ORDER AND TO COMPEL  - 5**

not performed.  That distinction was not discussed in *Rivera* because it was not necessary to do so:

> We need not decide the *Hoffman* question in this case, however.  Regardless whether *Hoffman* applies in Title VII cases, it is clear that it does not *require* a district court to allow the discovery sought here.  No backpay award has been authorized in this litigation.  Indeed, the plaintiffs have proposed several options for ensuring that, whether or not *Hoffman* applies, no award of backpay is given to any undocumented alien in this proceeding.  Thus, the very problem NIBCO has identified may well never arise here.

*Id*. at 1069.

Furthermore, *Rivera* did not foreclose the possibility that immigration status, although clearly irrelevant to the Title VII liability determination, might not become relevant later in the remedies portion of the litigation.  According to the circuit:

> The district court has not yet ruled on the plaintiffs' proposed bifurcated proceedings.  Although we do not order such proceedings here, it is clear that a separation between liability and damages would be consistent with our prior case law and would satisfy the concern that causes of action under Title VII not be dismissed, or lost through intimidation, on account of the existence of particular remedies.  The principal question to be decided in the action before us is whether NIBCO violated Title VII.  It makes no difference to the resolution of that question whether some of the plaintiffs are ineligible for certain forms of statutory relief.  NIBCO's contention that discovery regarding the plaintiff's immigration status is essential to its defense is therefore without merit.

*Id*. at 1070.

The circuit concluded the district court had not erred in determining that it would substantially burden the plaintiffs to allow the defendant to use the discovery process to inquire into their immigration status- " a status that NIBCO had the opportunity to examine upon hiring and this is irrelevant to the question of liability."  *Id*. at 1074.  (Emphasis added).  And the circuit observed that "[i]f the district court decides to bifurcate the proceeding, as the plaintiffs have requested, the availability of backpay remedies for certain plaintiffs will be determined, if at

**ORDER RE MOTIONS FOR**
**PROTECTIVE ORDER AND TO COMPEL  - 6**

1    all, only after the liability phase." *Id*. at 1075.

2         This court concludes immigration status is relevant to determination of

3    actual damages and does not place an undue burden on those Plaintiffs who elect

4    to pursue such damages.  In order to avoid any chilling of Plaintiffs' efforts to

5    pursue liability and statutory damages, however, the court will bifurcate the case

6    so that liability and statutory damages are resolved in the initial phase.  As

7    immigration status is irrelevant to those inquiries, there will be no discovery in the

8    initial phase regarding immigration status[2].  The scheduling order already entered

9    by the court (Ct. Rec. 18) will pertain solely to liability and statutory damages.[3] If

10   liability is established, Plaintiffs within the class will have to elect whether to

11   pursue actual damages.  Those Plaintiffs who elect to pursue actual damages will

12   be subject to discovery which may reveal their immigration status.

13

14   **III.  CONCLUSION**

15        Pursuant to Fed. R. Civ. P. 42(b), and in order to avoid prejudice to

16   Plaintiffs and to economize the proceedings, the captioned matter is

17   **BIFURCATED** such that liability and statutory damages will be determined in an

18

19

20   ─────────────────

21       [2] Defendants argue that deferring discovery concerning actual damages (and
     related issues) will result in a second round of depositions thereby leading to

22   greater costs as well as additional inefficiencies.  However, it seems unlikely that

23   extensive deposition practice will be needed in the initial liability phase of the trial

24   given the fact that the employment records of ACL Farms will be a primary source
     used to identify class action plaintiffs and employment history.

25
         [3] Trial is not scheduled until October 31, 2011, but there is the possibility
26   that liability and statutory damages issues could be resolved short of trial, allowing

27   for prompter commencement of the second phase regarding actual damages.

28

**ORDER RE MOTIONS FOR**
**PROTECTIVE ORDER AND TO COMPEL  - 7**

initial phase already established by the existing scheduling order.[4]  Following resolution of liability and statutory damages issues, and if necessary, there will be a secondary phase dedicated to resolution of actual damages issues and a separate scheduling order will be issued with regard thereto.

Plaintiffs' Motion For Protective Order (Ct. Rec. 52) is **GRANTED with regard to the initial phase concerning liability and statutory damages**.  There will be no discovery in the initial phase relating to immigration status, including, but not limited to: immigration documents, passports, visas, social security numbers, social security statements, tax identification numbers, I-9 tax forms from any employer, unemployment compensation information, and information about national origin and entry into the United States.  Plaintiff's Motion For Protective Order (Ct. Rec. 52) is **DENIED with regard to any secondary phase concerning actual damages**.

The Motion To Compel filed by Defendant WA-FLS (Ct. Rec. 76) is **DENIED** without prejudice to Defendant seeking the subject discovery from Plaintiffs in any secondary actual damages phase of the litigation.

**IT IS SO ORDERED.**  The District Court Executive is directed to forward copies of this order to counsel of record.

**DATED** this___12th___ day of November, 2010.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
Chief United States District Court Judge

_____

[4] Bifurcation can be ordered on the court's own motion. *Saxion v. Titan-C Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996).

**ORDER RE MOTIONS FOR
PROTECTIVE ORDER AND TO COMPEL  - 8**